**FILED**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

JAN 2 0 2017

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                        DEPUTY

| | | |
|---|---|---|
| CARMEN KROWEL | § | |
| **Plaintiff,** | § | |
| vs. | § | |
| | § | |
| DEBRA LEE JAMES | § | **SA17CA0038 DAE** |
| SECRETARY | § | |
| UNITED STATES AIR FORCE | § | |
| **Defendant.** | § | |

**PLAINTIFF'S ORGINAL COMPLAINT**

CARMEN KROWEL, Plaintiff herein, files this her Original Complaint, complaining of

DEBRRA LEE JAMES, Secretary United States Air Force, Defendant herein, and in support

thereof would show the Court as follows:

**I.
JURISDICTION and VENUE**

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended

(42 USC §§ 2000e et seq.) Employment Discrimination on the basis of national origin

(Colombian); race (Colombian-American); gender (female); harassment, hostile work

environment, retaliation, and disparate treatment in violation of Title VII of the Civil Rights Act

of 1964, as amended; discrimination on the basis of the disability in violation of the

Rehabilitation Act of 1973, as amended; and Age discrimination in violation of the Age

Discrimination in Employment Act of 1967 ("ADEA").

2. Jurisdiction in this Court is proper under 28 U.S.C. § 1331.

3. Venue in this Court is proper under 28 U.S.C. § 1391 (e)(1)(B) and (C) because the

Defendant is a Federal Agency that is subject to personal jurisdiction in this judicial district and

because this judicial district is where a substantial part of the events or omissions giving rise to

the asserted claims occurred and the Plaintiff resides in this judicial district and no real property is involved.

## II.
## PARTIES

4.   Plaintiff is a Colombian-American female and was fifty-two (52) years old at the time of filing her discrimination claim.

5.   Defendant is a military branch of the United States of America with its base known as Lackland Air Force Base located in Bexar County, Texas, and operating within this judicial district.

## III.
## CONDITIONS PRECEDENT TO SUIT

**A. Statement of Facts**

6. Plaintiff is a fifty-four (54) year old female Colombian-American of Colombia origin; and is in a protected class.

7.   Plaintiff has thirty-five (35) years of service with Defendant, United States Air Force Reserve (USAFR) stationed at Lackland Air Force Base (AFB), San Antonio, Texas from January 1, 2010 to date of filing this lawsuit.

8.   Plaintiff served in Afghanistan in a medical unit assigned to treat wounded American soldiers, NATO soldiers and civilian nationals for battle injuries.

9.   LTC. Steven Radtke (hereinafter referred to as "Commander Radtke") is the Commander for the 356 AS Squadron.

10.   Commander Radtke has dual supervision authority over Plaintiff in her employment capacity as "military" personal and "civilian" employee with Defendant, United States Air Force.

11.   Commander Radtke is Anglo American and is approximately forty two (42) years old.

12.   SMSgt Sherry Justice is an Anglo female approximately forty (40) years old who supervises Plaintiff and reports and serves under Commander Radtke.

13.   Commander Radtke is/was responsible for actions taken on the processing of Military discrimination claims.

**B.  Exhaustion of Administrative Remedies**

14.   Email dated October 29, 2015 to Air Force Reserve Command Headquarters (AFRC HQ) EO Program Manager, Grady Floyd, Plaintiff addresses her second request for EEO forms for the purpose of proceeding with her claim.

15.   Plaintiff timely submitted her signed Formal Military Complaint AF Form 1587 on December 11, 2015 to TSgt. Sarah Yarborough and to Cpt. Julian Glover, Defendant's Military EEO Counselors.

16.   Plaintiff attached to Defendant's Formal Military Complaint AF Form 1587 a written and signed statement of facts associated to Plaintiff's claims of discrimination.  The caption of the written Statement of Facts read: "MSgt. Carmen v. United States Air Force Addendum Attachment to AF Form 1587-Military Equal Opportunity Formal Complaint Summary Section 13-Specific Allegations of Discrimination".

17.   Defendant's EEO Counselors intentionally did not sign Plaintiff's Formal Military Complaint AF Form 1587.

18.   Email dated December 16, 2015 to Floyd Grady, Charles Quinn, and Lt. Col. Brantley to confirm receipt of her EEO complaint; only to be informed by Lt. Col. Amy Brantley she no longer worked in the inquiries and complaint office and referred Plaintiff to Floyd Grady.

19.   Email dated December 16, 2015, Charles Quinn informs Plaintiff there was no signature from an EEO office and asked why their signature was not on the form; and that there is some verbiage missing.

20.   Email dated December 18, 2015 from Charles Quinn acknowledges that Plaintiff's documents [Formal Military Complaint AF Form 1587 and Addendum] were sent to "433 EO Office, TSgt. Yarborough" and "she should be working during the January Unit Training Assembly (UTA)".

21.   Defendant refused to accept Plaintiff's Addendum to her Formal Military Complaint AF Form 1587 and directing Plaintiff to submit another complaint.

22.   Emails dated January 30 and 31, 2016, Plaintiff informed TSgt. Sarah Yarborough, she [Plaintiff] had a right to submit the Addendum to her Formal Military Complaint AF Form 1587 and would use the date she submitted AF Form 1587 as the commencement of the timelines Defendant had to complete the investigation of Plaintiff's complaint.

23.   Email dated May 12, 2016 to Cpt. Julian Glover (Defendant's Military EEO Counselor)  Plaintiff  made reference to her email of October 2015 and her Military EEO complaint; requested Officers Grady and Quinn to stop presenting misguided information relating to filing her EEO complaint; that she had mailed her formal Military complaint to Quinn and Grady on December 12, 2015; that he [Glover] had engaged in an attempt to have Plaintiff changed the language of her Formal Military complaint; and requested a final determination on her military discrimination complaint.

24.   Email dated August 18, 2016 to Lakreisha Johnson, Defendant's "Civilian" EO Manager, Plaintiff, requested a Final Agency Decision on her "Military" EO complaint.

25.  Email dated August 18, 2016, Lakreisha Johnson informed the Plaintiff that she should contact the 433rd [Military] EO Office.

26.  In email dated August 19, 2016, re: Formal Request for Final Agency [Decision], Lakreisha Johnson informs Plaintiff the "correct office [for her Military Complaint] is the 433rd ABW EO Office and Capt. Glover and TSgt. Sarah Yarborough".

27.  Emails from December, 2015, show 433rd ABW [Military] EO Office Capt. Glover and TSgt. Sarah Yarborough were aware of Plaintiff's formal Military EO complaint.

28.  Email dated September 19, 2016 to Capt. Julian Glover, and other Defendant's agents, are notified that there was sufficient evidence to show that Defendant had deliberately denied information associated to the processing of Plaintiff's Formal Military complaint and requested a Final Agency Decision; and that within ten (10) days Plaintiff would be filing a Motion for Intervention with the Equal Employment Opportunity Commission (EEOC).

29.  The EEOC denied Plaintiff's Motion for Intervention due to lack of jurisdiction.

30.  In an email dated September 20, 2016, Capt. Julian Glover contends that Plaintiff did not sign the AF Form 1587 and "this issue is considered closed and there is no formal Military EO complaint on behalf of the Plaintiff".

31.  Plaintiff's initial Military EEO complaint filed on December 11, 2015 included a claim of sexual harassment.

32.  Defendant separated Plaintiff's sexual harassment charge and referred the claim to Lakreisha Johnson, Defendant's "Civilian" EO Manager, for processing.

33.  Plaintiff exhausted her administrative remedies; Defendant failed to propery and timely process her Military EEO complaint: Defendant denied Plaintiff due process by and violated their responsibilities:

a.  Formal complaints may only be withdrawn in writing with the approval of the MEO Chief.

b.  MEO had nine (9) duty days to conduct complaint clarification.

c.  Staff Judge Advocate had six (6) duty days to complete legal review.

d.  The unit commander (Radkte) had five (5) duty days to outline intended actions as per AFI 36-2706, Chapter 2, Paragraph 2.5.

e.  Extensions may [could have being] be granted by the Chief of MEO if necessary.

f.  Sexual harassment processing times are shorter: MEO has six (6) duty days, SJA has four (4) duty days and the commander four (4) duty days.

g.  Upon completion of the complaint clarification, legal review, and commander's review/action, we will ask you to return for an out brief on the outcome of the complaint.  It will cover: The findings of your allegations i.e. allegations substantiated or unsubstantiated.

## IV.
## STATEMENT OF CLAIMS

### A.  Plaintiff Engaged in Protected Activity

34.  On or about May 7, 2015, Plaintiff disclosed she reasonably believed she was being discriminated against by Lt. Col. Jimmie Brooks, Anglo male; Commander Radtke, and SMSgt. Richard Hawkins, African American male, to the Active Duty Officer of Inspector General located at Lackland Air Force Base.

35.  On or about May 7, 2015, Plaintiff filed a complaint regarding discrimination, fraud, sexism with Ms. Janet Myers USAF AETC 37th TRW/Inspector General (IG).

36.   Plaintiff's IG complaint alleged:

a.  That Technical Sergeant (TSgt) Shannon Miller, African American, approximate age thirty-four (34) years old, was confronted by Lt. Col. Dane Horstmann, 356 Deputy Officer (DO) about her time card and accounting for her whereabouts at the time she reported as being at work.  Plaintiff had informed Lt. Col. Stamper, 433rd Judge Advocate (JAG) officer that TSgt Miller had excessive absences and was not under any covered Family Act Leave to warrant Miller's absences.

b.  After TSgt. Miller was questioned by Lt Col. Horstmann; Miller than informed Lt. Col. David Skowron, 356 Commander, that Lt. Col. Horstmann was having a sexual relationship with TSGT Sema Compazano.

c.  That SMSgt. Hawkins had continuously and knowingly falsified documents by giving stellar Enlisted Performance Reports (EPR) to TSgt. Esteban Mejia, 36, Male, Mexican American and Airman (AMN) Shawn Mushel, 23, Male, Mexican American; knowing Mejia and Mushel were "stealing" government time while performing their Unit Training Assembly (UTA) and Active Duty time.

d.  Senior Airman (SRA) Ashley Vidalez made allegations against Lt. Col. Horstmann alleging he made inappropriate advances towards her.

37.  On or about May 18, 2015, the 37th TRW IG (Ms. Myers) transferred Plaintiff's IG complaint to Air Force Reserve Command Inspector General (AFRC/IG) for processing; and on May 19, 2015 SMSgt. Christa Gil, AFRC IG acknowledge Plaintiff's complaint transfer.

38.  On or about May 21, 2015, SSgt. Corine Hudson 502 ABW Equal Opportunity (EO) sent Plaintiff an email asking her if she had contacted Captain Diana Pena; 433rd [Military] EO officer.

39.   On or about May 26, 2015,  Plaintiff met with Captain Pena and Pena refused to accept Plaintiff's documents/statement.

40. On June 15, 2015, Plaintiff contacted the 433rd Inspector General (IG) Major, Belitza Dominguez regarding her claims of discrimination.

41.   On or about June 29, 2015, Plaintiff contacted Ms. Myers, 37th TW IG regarding status of her IG complaint.

42.   On or about June 29, 2015, Plaintiff sent an email to Major Dominguez and Major Ronald Bell, 433rd IG Office, requesting a meeting with the Inspector General.

43.   On or about July 13, 2015, Plaintiff contacted SMSgt Gil, AFRC Headquarters (HQ) IG regarding her IG complaint.  Plaintiff disclosed to SMSgt  Gil that if "no one was willing to assist me than I was going to file a congressional complaint".

44.   On or about July 14, 2015, Lt. Col. Scott Winner, AFRC IG replied to Plaintiff's request for the status of her IG complaint. Winner informed Plaintiff, he had assigned Major James Pierce, and AFRC IG to her IG claim.

45.   On or about July 15, 2015, Major James Pierce notified Plaintiff that he had determined her IG complaints were associated to "command issues" and directed Plaintiff to notify her Wing leadership [Commander Radtke] on these issues; and informed Plaintiff that her IG case was closed.

46.   On or about July 22, 2015, Plaintiff sent Chief Brian Pinksy, 433rd Airlift Wing, Chief Master Sergeant Command Chief (AW/CCC) an email requesting to meet with him.

47.   On or about July 28, 2015, Plaintiff sent another request to meet with Chief Pinsky, 433rd Chief Master Sergeant Command Chief (CCC) and informed him that he had not responded to her previous email.

48.   On or about August 14, 2015,  Plaintiff met with Lt Col Theodore   Nicholson. 433rd Chaplain, and provided Nicholson with a copy of her Inspector General (IG) and Equal Employment Opportunity (EEO) complaint.

49.   On or about August 16, 2015, Plaintiff informed  Commander Radtke, she would not attend her evaluation meeting with SMSgt. Hawkins until such time her complaints of his fraud, discrimination, and retaliation were addressed.

50.   On or about August 18, 2015, Commander Radtke directed Plaintiff to sign a memo for the record (MFR) stating Plaintiff had declined to conduct her Midterm Assessment with SMSgt. Hawkins.

51.   On or about August 21, 2015, Plaintiff met with Operations Group Commander (OGC), Col. Merkle requesting assistance.  Plaintiff disclose to Merkle her reasonable belief that there had been a "quid pro quo" between Lt. Col. Brooks and SMSgt. Hawkins that lead to denying her the opportunity to compete for a promotion.

52.   Defendant had knowledge and was aware of Plaintiff's participation in the aforementioned protected activities; and had made protected disclosures of her reasonably belief of discriminatory unlawful practices by Defendant.

53.   Defendant had knowledge and was aware of Plaintiff's support and testimony on behalf of Sabrina Elizardo's, Hispanic female, discrimination claim filed in November, 2016 against Commander Radtke and Sherry Justice.

54.   Defendant had knowledge and was aware that Plaintiff filed an IG complaint; file an Military EO complaint, Civilian EO complaint against Commander Radtke and Sherry Justice on June 8, 2016; and Defendant had knowledge and was aware there was an ongoing (January 2016) sexual harassment, race, national origin, retaliation, harassment, subjection to hostile work

9

environment, "civilian" discrimination claim filed against Commander Radtke and SMSgt

RANK Justice.  Plaintiff filed an IG and a second Military EO claim on December 4, 2016 and a

Civilian EO on December 6, 2016 against SMSgt. Justice and Commander Radtke

## B. Gender, Disparate Treatment, Retaliation, Harassment, Subjection to Hostile Work Environment, Race, and National Origin Discrimination

55. Plaintiff was denied the opportunity for advancement/promotion.

56. On or about April 9, 2015, Plaintiff sent Commander Radtke an email addressing her

submission of her promotion package to SMSgt. Richard Hawkins.

57.  On or about April 15, 2015, Plaintiff sent supervisor SMSgt Hawkins her final

promotion package, SMSgt. Hawkins denied Plaintiff's promotion package; denying Plaintiff the

right to compete for the Step promotion for the rank of SMSgt.

58.  On or about April 24, 2015, Plaintiff sent an email to the 433rd AW/IG Wing

Inspections complaining she was discriminated when denied the opportunity to compete for a

promotion through the STEP program for the rank of SMSgt.

59. On or about September 14, 2015, Plaintiff met with Chief Rodger Brodzinski, Aviation

Resource Management Career Field Functional Manager, and (ARMCF/FM) requesting

assistance regarding SMSgt. Hawkins' discrimination.  Brodzinski directed Plaintiff to fill out a

climate survey.

60. On or about September 28, 2015, Plaintiff met with Ms. Eloise Stripling, President

AFGE Union Local 1367.  Plaintiff disclosed to Ms. Stripling of the discrimination, favoritism,

abuse of power and authority which she reasonably believe she would be protected under the

Federal Whistleblower Act.

61.  Defendant engaged in discriminatory disparate treatment against Plaintiff and

favoritism creating a hostile work environment.

62.   On or about October 3, 2015, Plaintiff disclosed to Lt Col Andrew Stamper 433rd JAG the following:

a.   That SMSgt. Hawkins had continuously falsified documents by giving stellar Enlisted Performance Reports (EPRs) to TSgt. Esteban Mejia, and AMN Mushel; knowing that Mejia and Mushel  had consistently and knowingly stolen "government time" while they were performing their Unit Training Assembly (UTA) and Active Duty time.

b.   That TSgt. Miller was promoted to MSgt. through the STEPS and given a five (5) Rating the highest Evaluation by Lt. Col. Brooks and SMSgt Hawkins; knowing TSgt. Miller was under questioning regarding where she was during the time she stated she was at work and that MSgt Cora Astbury, Non-Commissioned Officer in Charge (NCOIC) of the orderly room had complained about Miller's work performance to Lt Col Brooks and SMSgt Hawkins.

c.   That sometime during 2014, TSgt. Miller was promoted to MSgt. through the STEP Promotional Program.

d.   That TSgt. Miller had excessive absentees and questionable work performance and received a perfect fire wall 5 Evaluation by Lt. Col. Brooks and SMSgt. Hawkins.

e.   That Plaintiff questioned SMSgt Hawkins on the validity of Miller's STEP Promotion and that SMSgt Hawkins disclosed that he had been requested to do so.

f.   That SMSgt Hawkins the 356 AS, Sexual Awareness Prevention Officer, (SAPO) Representative "covered up the allegations" of sexual harassment  made by Vidalez against Lt. Col. Horstmann.

g.  That Lt. Col. Brooks who supported SMSgt. Hawkins's decision to deny Plaintiff's opportunity to submit her promotional package was complicit in the "cover-up".

h.  That Plaintiff reasonably believed Miller "blackmailed" and/or threaten Lt. Col. Horstmann because she got caught falsifying her time card and stealing government time.

i.  That there were issues of fraud, waste, abuse, intimidation, retaliation, sexism, discrimination, favoritism, cover ups, falsification of documents by SMSgt Hawkins, Lt. Col. Brooks, and Commander Radtke  were aware of these issues; and that there were other IG complaints that had been filed and several issues were pending at the AFRC level.

j.  That Plaintiff had refused to meet with SMSgt. Hawkins for her evaluation until someone gave her the respect she deserved as a military member and investigated her claims.

63.  SMSgt. Hawkins was aware of Mejia's confrontation with other women; and Hawkins intentionally failed to document Mejia's behavior and continued to give Mejia stellar evaluations and consideration for promotion.

64.  Plaintiff issued TSgt. Miejia, a disciplinary Letter of Counseling, (LOC), Plaintiff's actions were undermined by Lt. Col. Dave Skowron, Anglo male, the Deputy Officer of the squadron at the time.

65.  Lt. Col. Brooks informed Plaintiff that no actions could be taken against TSgt. Esteban Mejia was because SMSgt. Hawkins had failed to document Mejia's behavior and job performance; and that Mejia's EPRs/Evaluations given by SMSgt. Hawkins were good.

66.  In November-December, 2015, SMSgt. Hawkins and Commander Radtke hired MSgt Sherry Kononchuk, Anglo female approximately 40 years old, for the position of SARM Superintendent, the position held by SMSgt Hawkins.

67.  MSgt. Kononchuk had no Squadron Aviation Resource Management (SARM) experience and was less qualified and younger than Plaintiff.

68.  Plaintiff was the individual next in secession to fill the vacancy and position of SARM Superintendent held by SMSgt. Hawkins.

69.  Defendant was aware that when MSgt. Konochuk filled the vacancy of SARM Superintendent this would allow MSgt. Konochuk to qualify and be promoted to Senior Master Sergeant (SMSgt).

70.  Defendant had denied Plaintiff the rank of SMSgt twice.

71.  Defendant did not post the position for SARM Superintendent denying Plaintiff the opportunity to apply for the position.

72.  Plaintiff timely contacted EEO Specialist Pena on or about May **26**, 2015.

73.  On or about October 22, 2015, Plaintiff sent Major Amy Brantley an email requesting a contact for the Air Force Reserve Command (AFRC) EO because of Pena's failure to contact her.

74.  On or about October 29, 2015, Mr. Grady Floyd, AFRC IG contacted Plaintiff after she complained of Mr. Quinn from AFRC EO had not replied to her requests for assistance.

75.  Plaintiff made it clear to Mr. Floyd that Mr. Quinn had never sent her any emails.

76.  Plaintiff filed her Formal Military Complaint AF Form 1587 on December 11, 2015.

**C.  Disability Discrimination Retaliation, Harassment, Subjection to Hostile Work Environment, Race, and National Origin Discrimination**

77.  Plaintiff suffers from Post-Traumatic Stress Disorder (PTSD).

78.   Commander Radtke engaged in asking Plaintiff's work colleagues about her mental and conduct characteristics.  In April and/or May 2016, Plaintiff contacted Radtke and asked him to cease asking fellow co-workers whether Plaintiff was suicidal, violent, or capable of killing someone;  whether Plaintiff had engaged in discrimination against a Hispanic or African American Airman; or engaged in using racial slurs.

79.   Plaintiff submitted a request to SMSgt Justice to perform her Annual Tour (AT) from October 17-21, 2016, which Justice approved.

80.   On October 19, 2016, Justice texted Plaintiff explaining that, "I meant to tell you earlier that the Commander (Radtke) directed your AT order to end today.  We will talk about it tomorrow.  My apologies".

81.   The severity of harassment and subjection to hostile work environment by both Radtke and SMSgt Justice against Plaintiff had become unbearable which subsequently led to the following on October 20, 2016:

a.   On October 20, 2016, Justice informed Plaintiff that the action to end her AT on October 19, 2016 was directed by Commander Radtke.  Justice informed Plaintiff that a meeting was scheduled to meet with Commander Radtke at 1:30pm.

b.   Plaintiff asked  Justice for what reason was the meeting for,  and "If this [AT] is due to funding I am ok with it and if it is due for other reasons than put it in an email and let's move on."

c.   Justice disclosed to Plaintiff the reason Commander Raktke ended her AT on October 19, 2016 was because of her "failure to progress because of not having the Charm class".  This issue was raised in April, 2015, when Plaintiff was denied a promotion and raised in Plaintiff's Military EO complaint filed on December 11, 2015.

14

    d.    Plaintiff conveyed to SMSgt Justice to follow through with a demotion or termination, and asked "to leave me alone".

    e.    Plaintiff declared to SMSgt Justice, "I suffer from PTSD and have a heart condition", to which Justice replied, "No you don't." At that point, Mr. Michael Mirarchi intervened and told Justice, "yes she does, let's back off."

    f.    At this point Plaintiff started to hyperventilate and cry as she could not breathe and her heart was racing out of control. This was the second time Plaintiff had experienced this on the job anxiety, it previously occurred in April, 2016 involving Commander Radtke and Justice, and Plaintiff had to go to the Next Care and Urgent Care facility and was sent to Christus Santa Rosa emergency room.

    g.    Plaintiff grabbed Mr. Mirarchi, and conveyed her belief, "They [Radtke and Justice] are trying to kill me! They are trying to kill me! Mr. Mirarchi took Plaintiff downstairs so that she could calm down.

    h.    At this point Chief, Thomas Veilluiex came by and Plaintiff believes Veilluiex, maybe the individual who called the ambulance. Plaintiff disclosed to Veilluiex that she could no longer tolerate the hostile work environment.

    i.    Under the circumstances, Plaintiff disclosed to Veilluiex that "Justice and Radtke have destroyed me and I am going to destroy them"! "I will not give up until I hold them accountable in court".

    82.    On October 27, 2016, Commander Radtke sent Plaintiff a Memo stating- "This is official notice that due to recent conduct and threatening statements made about your leadership, you are excused from the November UTA."

83.   Documents pertaining Plaintiff's AT Order were provided to Military EO (MEO) Capt. Julian Glover, Civilian EO Ms. Lakreisha Johnson, and Civilian EO Counselor Mr. Robert Carman.

84.   Defendant took adverse employment action against Plaintiff by removing her from military duty and did so because of her disclosure of suffering from PTSD to SMSgt  Justice on October 20, 2016.

85.   PTSD is a disability.

86.   Defendant denied Plaintiff the opportunity to request reasonable accommodations or to have Plaintiff reassigned to another unit or position.

87.   Commander Radtke used, and has continued to use, his "dual" supervisory authority over Plaintiff; by placing the Plaintiff on Administrative Duty in her "civilian" employment status with USAF on October 20, 2016.

88.   Commander Radtke subjected Plaintiff for "fitness for duty" with the Physical Evaluation Board (PEB); knowing that the PEB can terminate the Plaintiff or have Plaintiff return to work with restrictions.

89.   The incident of October 20, 2016 had been filed as second MEO complaint with Capt. Julian Glover on December 4, 2016.

90.   The adverse employment actions by Defendant are similar and alike to the complaint filed by Plaintiff on December 11, 2015 and seeks to have this claim accepted by the Court to consolidate this claim for cost efficiently and less burden on the Court; and involves Commander Radtke who has a decision making authority of how Military EO complaints are processed and has dual supervision authority of the Plaintiff.

## V.
## CAUSES OF ACTION

A.  Title VII employment discrimination

91.   The conduct of Defendant constitutes a violation of the Equal Employment Opportunity Acts prohibitions of discrimination based upon Race (Colombian); and National Origin (Colombian-American).

92.   This violation caused Plaintiff to suffer damages.

B.  Retaliation and Hostile Work Environment.

93.   Defendant may have participated in retaliation and conduct creating a hostile work environment to Plaintiff, causing her economic and other damages.

C.  Harassment

94.   Defendant has participated in harassment against Plaintiff, causing her economic and other damages.

D.  Age and Disability (Rehabilitation Act of 1973, Age Discrimination in Employment Act of 1967 ("ADEA").

95.   Defendant has participated in wrongful employment actions against Plaintiff, causing her economic and other damages

## VI.
## DAMAGES

96.   Defendant's acts and omissions have caused Plaintiff to suffer damages including past and future lost earnings (including back pay and front pay), past and future injury to reputation, and past and future mental anguish.

97.   Plaintiff seeks recovery of these damages from Defendant.

## VII.
## ATTORNEY FEES

98.    Defendant's acts and omissions have caused Plaintiff to incur attorney fees and court

costs.  Plaintiff is entitled to an award of  attorney's  fees and court costs under Title VII, 42

U.S.C. § 2000e-5(k). Plaintiff seeks recovery from Defendant all attorney's fees and curt costs

through judgment in this court with additional contingent amounts in the event of post-judgment

and appellate proceedings.  All conditions precedent to the recovery of attorney fees have been

satisfied.

## VII.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendant

be cited to appear and answer herein to Plaintiff's Original Complaint, and that upon final trial,

this court enter a judgment awarding the Plaintiff all of the aforementioned damages, attorney's

fees, costs of court, and prejudgment and post-judgment interest. Plaintiff also asks for such

other and further relief, whether legal or equitable, to which Plaintiff may be justly entitled.

Plaintiff requests a jury trial.

Respectfully submitted,

LAW OFFICES OF ARTHUR G. VEGA
P.O. Box 461106
San Antonio, Texas 78246-1106
Telephone Number:   (210) 379-3111
Facsimile Number:    (210) 225-7751
E-mail: artavega@yahoo.com

ARTHUR G. VEGA
State Bar No. 20533600

ATTORNEY  FOR  PLAINTIFF